REUTHER v. ZIEGENFUS.

1. DEEDS—INCOMPETENCY—UNDUE INFLUENCE.

In a suit to set aside deeds by a mother to her sons, on the grounds of mental incompetency and undue influence, evidence *held,* insufficient to establish the allegations.

2. SAME—DELIVERY.

Evidence that attorney who drew deed handed it to grantee with the statement, "Now this is your deed," and that two days later grantee had it recorded, *held,* to establish sufficient delivery, although after its recording it was kept in a box belonging to grantor.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 16, 1929. (Docket No. 128, Calendar No. 33,404.) Decided June 3, 1929.

Bill by Pearl E. Reuther against Edward Ziegenfus and others to set aside certain deeds. From decree for defendants, plaintiff appeals. Affirmed.

*Fred H. Aldrich,* for plaintiff.

*Joseph B. Beckenstein (John Sklar,* of counsel), for defendants.

McDONALD, J. The purpose of this suit was to have set aside certain deeds given by the plaintiff's mother, now deceased, to her sons, Edward Ziegenfus and William A. Ziegenfus.

The theory of the bill is that Mrs. Ziegenfus was mentally incompetent at the time the deeds were executed, and that they were procured as the result

of undue influence by Edward and William. From a decree dismissing her bill the plaintiff has appealed.

The deeds in question were made at different times and under different conditions. We will first discuss the deed to William. In 1918, Mrs. Ziegenfus purchased a farm of 42 acres near Mt. Clemens in Macomb county, Michigan. Of this she gave eight acres to the plaintiff. In 1924, she deeded the balance, 34 acres, to William.

The facts and circumstances attending the making of this deed are not at all indicative of mental incompetency or undue influence. The testimony shows that she went to Mr. Whiting's office on October 29, 1923, and explained to him what she wanted. William was with her. She directed Mr. Whiting to draw the deed and went away. On January 5, 1924, she returned alone. She executed the deed and requested Mr. Whiting to record it. It was recorded and delivered by her to William in February. At this time her health was unimpaired and there can be no question as to her mental competency to transact business. She evidently intended to divide this 42-acre tract of land between the plaintiff and William. The evidence is clear that William contributed a considerable portion of the money that went into the purchase price; and this fact probably explains her reason for giving him the larger share. As we read the record, there is a total lack of evidence tending to show mental incompetency or undue influence as to this transaction.

The deed to Edward was made August 5, 1925. In April of that year, Mrs. Ziegenfus became ill with a severe heart ailment. This sickness continued until her death on September 15, 1925. The

plaintiff says that during this entire period and for some time prior thereto her mother was mentally incompetent; that William and Edward constantly talked to her against the plaintiff and represented to her that the plaintiff had taken sides with her father in a divorce suit which the father and mother had in 1921 and had testified falsely in behalf of the father; that the mother had delusions, was irrational, and was easily influenced by the statements of William and Edward. It is her claim that in this state of mind the deed to Edward was executed.

The facts in regard to the divorce are that Mrs. Ziegenfus' husband secured a decree against her in 1921. They had been estranged for some time. She made no contest. The plaintiff was a witness for her father. Her mother secured and kept a typewritten transcript of her testimony. There is no doubt that she was displeased with the plaintiff, but that fact does not seem to have disturbed their family relations, which continued until the mother's death. The plaintiff testified that she visited her mother, helped care for her during her sickness, and was treated kindly. The sons, William and Edward, were very much against the father and were angry with the plaintiff because of her testimony. They so expressed themselves to her and to their mother. And while it is undoubtedly true that the mother retained to the last some feeling against the plaintiff, there is no reason for believing that her sons were responsible for it. But if they were, it does not appear that in any way it influenced the deed to Edward. She had provided for the plaintiff by giving her eight acres of land, which, at the time of the deed to Edward, had become very valuable. She had provided for William, and she evidently thought it was time she did something for Edward. He had

received nothing. That she had this situation in mind when Edward's deed was made is apparent from the evidence. She told her sister, Mrs. Davis, that she had provided for Pearl and William, and that she was going to give Edward what was left. Mrs. Davis testified:

"She says, 'The rest don't amount to very much. I am sorry I cannot give Edward more, but I am giving him what is left.' She said she had given Edward the home they lived in and the two half acres, and the expenses were to be taken out, she said, and the balance to go to Edward. If she died the expenses were to be taken out of the two half acres. She said she had fixed up every thing, giving Pearl eight acres and the balance to Willie, the balance of the farm."

In view of these and other facts not necessary to mention, we conclude that the charge of undue influence is not sustained.

As to the claim of mental incompetency, the only testimony on that question is that Mrs. Ziegenfus was subject to delusions; that she imagined animals were in her room, running over her bed; that she saw other strange sights and heard unusual noises. The circuit judge did not attach much credit to these stories. In disposing of the question, he said:

"Many disinterested witnesses testified that they had heard Mrs. Ziegenfus talk on innumerable occasions, and that on no occasion did she ever evidence any symptoms of irrationality. But that on the contrary she spoke sensibly and wisely, and was often sought by her friends and relatives as a giver of sage advice and wise counsel upon the subject of real estate investments and other business matters."

Her attending physician, who visited her once each day and many times twice during her illness, testified:

"There was never anything in her actions or conversation that indicated to me that she was not of clear mind."

The lawyer who drew the deed and who was not acquainted with any of the Ziegenfus family prior to that time says that he talked with her for two and a half hours and that he considered her "decidedly competent."

The evidence leaves no doubt as to her mental competency.

The further claim is made that there was no delivery of this deed during the lifetime of Mrs. Ziegenfus. At the time the deed was executed, Edward was unmarried and was living with his mother in her home. With the making of the deed a contract was also executed providing for her care and support by Edward. The lawyer who drew the papers testified that he gave a duplicate of the contract to each and handed the deed to Edward with the statement, "Now this is your deed." Two days later Edward had it recorded. The record is not clear as to what was done with the deed after that, but Edward says, "I think we kept the deed at the house. I think it was kept right in the little box of my mother's."

The evidence shows a sufficient delivery. *Wilcox* v. *Wilcox*, 221 Mich. 290.

The decree of the trial court is affirmed, with costs to the defendants.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.